UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOHN WOJCIK, Personal Representative of the Estate of FRANK J. WOJCIK, deceased,<br><br>      Plaintiff,<br><br>      v.<br><br>CITY OF MICHIGAN CITY, a municipal corporation, and SEAN STEELE, individually, and in his official capacity as a police officer,<br><br>      Defendants. | Civil Action No. 3:11-CV-215 JVB |

**OPINION AND ORDER**

Plaintiff, the estate of Frank Wojcik, has sued the City of Michigan City and Corporal Sean Steele, both in his individual and official capacities, under 42 U.S.C. § 1983 for an unconstitutional deprivation of life in violation of the Fourteenth Amendment. Frank Wojcik died in a fatal car collision when he pulled out in front of a car whose driver, Jessica Johnson, was fleeing from the police. Plaintiff argues that the police, namely, Defendant Steele, acted with such deliberate indifference in pursuing Jessica Johnson that his behavior "shocked the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 848–850 (1998). Plaintiff has also brought a state law negligence claim against the same Defendants.

Defendants have moved for summary judgment on the § 1983 claim, arguing that Steele is entitled to qualified immunity because his actions did not rise to the unconstitutional level of "shocking the conscience."

Shocking the conscience in the context of a police pursuit requires intent to harm. The Court assumes Plaintiff's version of the facts. But there is no evidence that Corporal Steele intended to harm Frank Wojcik. Therefore, the Court grants Defendants' Motion for Summary Judgment. The Court remands the negligence claim to LaPorte County Superior Court.

**A. Facts**

**(1)** *The traffic stop and the police pursuit*

On April 30, 2009, Corporal Sean Steele stopped a white Volvo traveling forty-three miles per hour in a thirty mile per hour zone. (Exh. A, Steele Aff. ¶¶ 14–16.)[1] Corporal Steele asked the driver for her driver's license. (*Id.* ¶ 20.) He learned that the driver of the car was sixteen-year old Jessica Johnson. (*Id.*) He advised her that she was pulled over for speeding. (*Id.* ¶ 21.) He decided to give her a warning citation for the speeding, but as he was writing up the warning, he realized that she should have been in school. (*Id.* ¶¶ 22, 24–25.) Steele asked Johnson why she wasn't in school. (*Id.* ¶ 25.) She responded with "I'm just not." (*Id.*) Corporal Steele then asked her if she was truant to which she answered yes. (*Id.*)

Steele then returned to his car where he asked over the radio for guidance on how to handle the truancy matter. (*Id.* ¶ 26–27.) Lt. Harrison responded and advised him that he could arrest her or refer the matter to the Michigan City school resource officer. (*Id.* ¶ 27.) Steele returned to Johnson's car and told her that she could be arrested for being truant, but he exercised discretion to not arrest her. (*Id.* ¶ 28.) He then handed her a warning citation and informed her that she was free to go. (*Id.*)

---

[1] The Court relies heavily on Corporal Steele's Affidavit because his description of the events is largely not in dispute. To the extent the events are in dispute, the Court accepts Plaintiff's version.

As she was pulling away, Steele saw her light a cigarette. (*Id*. ¶ 29.) He pulled up alongside her and told her to give him her driver's license. (*Id*.) Steele's intention was to write her a citation for minor in possession of tobacco. (*Id*.)  At this point the cars were next to each other facing opposite directions. (*Id*. ¶ 30.) Steele recognized that his dash camera would not record any of the events and repositioned his vehicle so any interaction between him and Johnson would be captured. (*Id*. ¶ 30–31.) Steele did not remember the Indiana Code section for minor in possession of tobacco and radioed in to see if anyone had it. (*Id*. ¶ 32.) At this point, Johnson drove away despite Steele still having her driver's license. (*Id*.)

Steele followed her with his lights still on but did not yet activate his siren. (*Id*. ¶ 34.) He initially thought that there was some kind of misunderstanding, perhaps Johnson thought that she was free to go. (*Id*.) He pursued her for several blocks and noted later that she was not significantly disregarding any traffic laws at that time. (*Id*. ¶ 41.)

As the speeds increased though, it became apparent that Johnson did not intend to pull over. Because of this, he activated his siren and intensified his pursuit tactics. (*Id*. ¶ 45.) Steele pursued Johnson with his sirens and lights on for several blocks through a more rural part of Michigan City; at times, he was approaching a speed of sixty miles per hour just to keep up.

While Steele continued to pursue, two others officers joined the chase: Officers Campbell and Gutowski. (*Id*. ¶ 52–53.) Gutowski took the lead in the pursuit because his vehicle, unlike Campbell's and Steele's, was fully marked and had a rooftop light bar. (*Id*. ¶ 53.)  And on a cloudy and rainy day, the officers believed Gutowski's vehicle would warn oncoming traffic more effectively. (*Id*.)

The pursuit headed towards a more populated area of town on Michigan Boulevard, a thoroughfare. (*Id*. ¶ 56.) Steele thought the pursuit was reasonable at all times before this; but

given the combination of traffic density, weather conditions, and Johnson's increasingly erratic driving, he felt that pursuit was no longer appropriate. (*Id.* ¶ 56–57.) He radioed, "13-293, go ahead and back off, it's too wet right now and we don't want an accident." (*Id.* ¶ 57.) Just seconds after this radio call, Johnson's car collided with the decedent's car, killing Frank Wojcik. (*Id.* ¶ 58.)

### (2) *Police training and operating procedures*

The Michigan City Police Department had a Standard Operating Procedure (S.O.P.) that set out standards for police conduct in the context of a pursuit. S.O.P. 43 requires police officers to weigh the benefit of capturing the suspect against the risk posed to the public[2]. (*See* Exs. 8 and 9.) S.O.P. 43 sets out a number of factors to be considered on when to initiate or terminate a pursuit. (*Id.*) For the purposes of this Summary Judgment Motion, the Court does not need to decide whether Steele violated any provision in S.O.P. 43; but, even if the Court were to find that he violated the entirety of S.O.P. 43, that finding would have no bearing on the outcome of the case.

Police officers in Michigan City also underwent Emergency Vehicle Operations (E.V.O.) training before they were hired on to the force. (*See* Ex. A, Steele Aff. ¶ 3.) Corporal Steele underwent this training but also took a course to become certified as an E.V.O. instructor. (*Id.* ¶ 5.) The course included training in vehicle operations and skills development both in the field and the classroom. (*Id.*) The Court will assume that Corporal Steele defied all of his training in

---

[2] There were actually two S.O.P. 43s that may have been in effect at the time of the pursuit. The first became effective in 2001 and the second in 2007. However, the confusion resulted from a procedural oversight in which it was unclear if the new S.O.P had been officially adopted. (*See* Ex. B, Harris Dep. 37:10–25.) The Court will assume that the new S.O.P was in effect at the time of the pursuit because the 2007 S.O.P. was more restrictive on officer behavior and thus more favorable to Plaintiff.

deciding this Summary Judgment Motion but does not make any determination if Steele actually violated his training.

B.  **Summary judgment standard**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing each cause of action determines materiality. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts considering summary judgment must view the evidence "in the light most favorable to the party opposing the motion," *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003), which means drawing the possible reasonable inferences against summary judgment. *See Liberty Lobby*, 477 U.S. at 242.

C.  **Qualified immunity and municipal liability**

Defendants assert the qualified immunity defense. Qualified immunity shields public servants from liability when they perform discretionary duties. *Chelios v. Heavener*, 520 F.3d 678 (7th Cir. 2008) (citing *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007)). The defense protects public officials "insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v.* Fitzgerald, 457 U.S. 800, 818 (1982).

Overcoming this burden requires a showing that (1) a constitutional right was violated, and (2) that the right was clearly established at the time of the violation. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000).

**(1)** *Officer Steele's actions did not shock the conscience*

Even if reckless or deliberately indifferent, police pursuits violate the Fourteenth Amendment's guarantee of substantive due process only if a purpose to cause harm was unrelated to the legitimate object of arrest. Only in such a case will the officer's conduct be found to satisfy the elements of arbitrary conduct shocking the conscience, necessary for a due process violation. *County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998). More directly, "[t]he *sine qua non* of liability in cases analogous to high-speed chases . . . is a purpose to cause harm." *Bublitz v. Cottey*, 327 F.3d 485, 491 (7th Cir. 2003) (quoting *Schaefer v. Goch*, 153 F.3d 793, 798 (7th Cir. 1998)). Most importantly though, in cases where an innocent bystander is harmed, there must be evidence that the officer intended to cause harm to that innocent bystander. *See Id.* at 491–492 (holding that where a police officer acted negligently, but with no intent or purpose to harm innocent bystanders, there is no § 1983 violation).

Plaintiff argues that Steele was so infuriated with Johnson's behavior during the initial traffic stop that the decision to initiate or not terminate the pursuit was unrelated to a legitimate object of arrest and, therefore, rose to the level of shocking the conscience:

> Officer Steele's conduct violated Plaintiff Frank Wojcik's constitutional right to life pursuant to the 14th Amendment because his abuse of police power due to tainted motives led him to initiate and perpetuate a police pursuit that was the result of a deliberate indifference and reckless disregard for the safety of the public causing Plaintiff's death. . . . [I]t is a fact issue for the Jury to determine whether Corporal Steele's agitation and irritation with Ms. Johnson caused him to improperly use his badge to pursue her and that his actions were "inspired by malice" such that it amounted to an abuse of official power that shocks the conscience.

(Pl. Resp. 4.) But Plaintiff's theory of liability focuses on intent to harm directed towards Johnson, not Wojcik. Additionally, Plaintiff appears to be blending two different standards of

6

liability under § 1983: "deliberate indifference that rises to a reckless disregard" and "shocking the conscience."

Plaintiff asserts that "in the context of a non-emergency police motor vehicle accident, a criminal recklessness/deliberate indifference standard would apply." (Pl. Resp. 15.) In support of this principle, Plaintiff cites *Hill v. Shobe*, 93 F.3d 418 (7th Cir. 1996) and *Wells v. Bisard*, No. 87 CV 1049, 2011 WL 5827213 (S.D. Ind. 2011). But these cases do not deal with emergency police pursuits.

In *Hill*, the police officer was not responding to any kind of emergency nor was involved in a traffic stop; he was simply speeding without purpose, ran a red light, and crashed into the defendant's car. 93 F.3d at 420. The plaintiffs in that case brought a § 1983 action alleging the officer was acted with such recklessness that he deprived the defendant of his constitutional right to life. *Id*. The *Hill* court found that in non-emergency situations a lesser criminal recklessness standard applies as opposed to the more onerous "intent to harm." *Id*. at 422.

Similarly, in *Wells*, a police officer who was drinking alcohol before and during his shift heard on the radio that a fellow officer was looking for a suspect. 2011 WL 5827213, at *1. The radioing officer did not request backup. Despite this fact though, the officer who had been drinking activated his emergency lights and "drove his cruiser at speeds in excess of 70 miles per hour in a 40 mile per hour residential zone" to the scene. *Id*. As if the officer did not already have enough on his plate, he "used his in-car laptop to instant message another officer about non-police matters" while he was speeding towards the scene. *Id*. The officer crashed into the defendant's motorcycle and killed him. "Two hours after the accident, [the officer's] blood alcohol level registered at .19." *Id*.

7

The *Wells* court held that the officer's actions should be constitutionally judged under a criminal recklessness standard because the accident occurred in a non-emergency setting. *Id*. In those settings, the "intent to harm" standard set forth in *Lewis* does not apply. *Id*.

But, unlike the facts in *Wells* and *Hill*, this case deals with an emergency setting and, therefore, the intent to harm standard applies. While "[c]onduct that is 'deliberately indifferent' may in certain circumstances 'shock the conscience'; in emergency situations (such as high-speed chases), however, conduct 'shocks the conscience' only if there was intent to cause harm", *Carter*, 328 F.3d at 948 (citing *Lewis*, 523 U.S. at 849; *Bublitz*, 327 F.3d at 491; *Schaefer v. Goch*, 153 F.3d 793, 798 (7th Cir. 1998)), unrelated to the legitimate object of arrest. *Lewis*, 523 U.S. at 846.

There is no evidence in the record—and Plaintiff makes no argument in his brief—that Steele intended to harm Wojcik. Accordingly, the Court finds that Steele's actions did not violate Wojcik's constitutional right to life.

**(2)** *Intent to harm Johnson*

Plaintiff argues that Steele's actions towards Johnson "shocked the conscience."[3] Plaintiff claims "Corporal Steele's agitation and irritation with Ms. Johnson caused him to improperly use his badge to pursue her and that his actions were "inspired by malice" such that it amounted to an abuse of official power that shocks the conscience." The Seventh Circuit has ruled on exactly this type of scenario in *Steen v. Myers*, 486 F.3d 1017 (7th Cir. 2007).

The plaintiffs in *Steen* argued that there was evidence of "animosity and perhaps a nefarious motive," *id.* at 1022, that caused the officer to "violate departmental policy and common sense

---

[3] Plaintiff devotes a significant portion of his brief to Steele's actions towards Johnson. The Court will address this argument to redress any concerns Plaintiff may have that the Court is misconstruing Plaintiff's claims.

by continuing a high-speed pursuit for a minor traffic violation." *Id*. at 1023. Additionally, as Plaintiff does in this action, the plaintiffs in *Steen* presented evidence that the officer could have terminated the pursuit and located the perpetrator the following day because his identity was already known. *Id*.

The *Steen* court rejected any argument that the behavior shocked the conscience. The court held that pursuing a suspect, even for a minor traffic stop, is a legitimate government interest. *Id.* (citing *Graves v. Thomas*, 450 F.3d 1215, 1223–1224 (10th Cir. 2006). Accordingly, a plaintiff asserting this type of argument needs to show intent to harm that goes beyond initiating, continuing, or deciding when to terminate a pursuit because they are all related to a legitimate government interest. The *Steen* court, in a nearly identical fact scenario, found that there was no evidence of such intent to harm *Id*. at 1024. Beyond this, the *Steen* court held that "a failure to comply with departmental policy does not implicate the constitutional protections of the Fourteenth Amendment." *Id*. at 1023 (citing *Lewis*, 523 U.S.833, 838–839). These policy violations go towards whether the "pursuit was wise, not whether it violated the Constitution." *Id*.

Plaintiff has presented no unique theory separate from those considered in *Steen.* Even assuming that Steele pursued Johnson because of personal animus—an assumption the Court doubts—she was still committing a misdemeanor offense when she pulled away from the traffic stop. Indiana Code § 35-44-3-3 (2009) states that a person who knowingly or intentionally flees from a law enforcement officer after the officer has put on his lights, identified himself, and ordered the person to stop commits a class A misdemeanor. Steele's patrol car had its lights on, he had already identified himself, and he told her to "[s]tay put." (Ex. 1, Corporal Sean Steele

9

Dashcam Transcript at 12:17:18.) Plaintiff needs and has not shown that there is any evidence of intent to harm that went beyond a legitimate government interest.

### (3) *The right was not clearly established*

The Court finds that that there is no constitutional violation; but, even if there was one, Plaintiff has not shown that the right was clearly established at the time of the chase such that Steele should have known that his actions violated the Constitution.

A right is clearly established when "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates" the Constitution. *Denius v.Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). This clarity can come from a closely analogous case or by showing that the actions were "so plainly excessive that, as an objective matter, the police officers would have been on notice." *Chelios*, 520 F.3d at 691 (quoting *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996).

Plaintiff has not cited a closely analogous case establishing a right. In fact, the Court is not aware of a single case where a police officer, in the context of a chase, was found to have violated a constitutional right post-*Lewis*.

Additionally, Plaintiff has not carried the burden of showing that a reasonable officer would have known that Steele's actions were so excessive that he violated the Constitution. Plaintiff argues that a reasonable officer, who had expert knowledge of departmental policies, and in fact, taught those policies to others, would have known that violating those policies may go towards violating the Constitution. (*See* Pl. Resp. 20.) But this argument is contrary to law. Policy violations carry no weight in determining when an officer acts unconstitutionally. *See Steen*,

*supra*, 486 F.3d at 1023.   Beyond that, Plaintiff does nothing more than stating, in conclusory fashion, that Steele knew he was violating Plaintiff's constitutional rights. (*See* Pl. Resp. 19–20.)

Consequently, Steele would be entitled to qualified immunity even if the Court found that he acted unconstitutionally.

**(4)** *Summary judgment is appropriate for Steele and the City of Michigan City*

The Court finds that Steele did not intend to harm Johnson or Wojcik. Therefore, summary judgment is appropriate in favor of Defendant Sean Steele as to § 1983 claim. Since there is no constitutional violation, Summary Judgment is also appropriate for Defendant City of Michigan City.

**D.  Remand of the negligence claim**

Pendent jurisdiction is discretionary and governed by 28 U.S.C. § 1367(a). "[A] district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims." *Wright v. Associated Ins. Companies Inc.,* 29 F.3d 1244, 1251 (7th Cir.1994) (citing *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "If the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter to the state court." *Rothman v. Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997) (quoting *Wright*, 29 F.3d at 1251).

In cases where all federal claims are dismissed before trial, the balance of these factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims. Therefore the general rule is that, when all federal claims are dismissed before trial, the district

11

court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits. *Gibbs*, 383 U.S. at 726.

The Court has not decided any issue that is dispositive over the negligence claim and will follow the general rule. It is in the interest of judicial economy, convenience, fairness, and comity to remand this case to LaPorte County Superior Court as the negligence claim originated there and this Court has decided and dealt solely with the § 1983 claim.

**E. Conclusion**

For those reasons, the Court:

- GRANTS Defendants' Motion for Summary Judgment (DE 122);

- REMANDS the negligence claim (Count II of the *Second Amended Complaint*, DE 118) to LaPorte County Superior Court;

- DENIES as MOOT Defendants' Motion to Partially Strike Plaintiff's Designation of Evidence (DE 130);

- DENIES as MOOT Defendants' Motion to Vacate September Trial and August Final Pre-Trial Conference (DE 135); and

- DENIES as MOOT Defendants' Motion to Strike (DE 140).

SO ORDERED on August 13, 2013.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE